691 So.2d 150 (1997)
ALLIED SIGNAL, INC.; Arcadian Corporation General Partner of Arcadian Fertilizer L.P.; BASF Corporation; Borden Chemicals & Plastics Operating Limited Partnership; Borden, Inc.; Liquid Carbonic Corporation; Rubicon Inc.; Shell Oil Company; Uniroyal Chemical Company, Inc.; Vulcan Chemicals, a Division of Vulcan Materials Company; and Monochem, Inc.
v.
Edward JACKSON; Amos Joseph Favorite, Sr.; Sam Baker; Edwin W. Edwards, in his Capacity as Governor of the State of Louisiana; Robert Poche, in his Capacity as Registrar of Voters of Ascension Parish; and Tommy Martinez, in his Capacity as President of Ascension Parish Council.
No. 96 CA 0138.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Writ Denied April 25, 1997.
*152 William R. D'Armond, Melanie M. Hartmann, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, Frank Simoneaux, Simoneaux & Carlton, Baton Rouge, for Plaintiffs-Appellees, Allied Signal, Inc., et al.
Thomas C. Delahaye, L. Phillip Canova, Jr., Louis W. Delahaye, Canova & Delahaye, Plaquemine, for Defendants-Appellants, Edward Jackson, et al.
R. Ryland Percy, III, Timothy E. Pujol, Stephanie W. Wall, Percy, Pujol, O'Brien & Wiley, Gonzales, for Intervenors-Appellees, Ascension Chamber of Commerce, Inc., Martin McConnell, and Pamela Espey, et al.
Before CARTER and PARRO, JJ., and McDONALD,[1] J. Pro Tem.
PARRO, Judge.
This is an appeal from a judgment declaring that certain industrial areas may not be included in the proposed Town of Geismar, which the defendants were attempting to have incorporated. The judgment also granted a permanent injunction with respect to any further action on the defendants' petition to incorporate the proposed areas into the Town of Geismar. For the following reasons, we affirm.

Facts and Procedural History
Edward Jackson, Amos J. Favorite, Sr., and Sam Baker, as chairpersons for the incorporation committee, prepared a petition for incorporation of a new municipality to be *153 called the Town of Geismar.[2] The petition was filed with the registrar of voters for Ascension Parish on March 24,1995, for verification of the percentage of electorate pursuant to LSA-R.S. 33:2 and 3.
On March 29, 1995, plaintiffs filed a petition for declaratory judgment and injunctive relief against the chairpersons, Governor Edwin W. Edwards, Ascension Parish Registrar of Voters Robert Poche, and Ascension Parish Council President Tommy Martinez (collectively referred to as "defendants"), with respect to future action regarding the petition for the incorporation of Geismar. Plaintiffs in this action are Allied Signal, Inc., Arcadian Corporation, BASF Corporation, Borden Chemicals & Plastics Operating Limited Partnership, Borden, Inc., Liquid Carbonic Industries Corporation, Rubicon, Inc., Shell Oil Company, Uniroyal Chemical Company, Inc., Vulcan Chemicals, and Monochem, Inc. By amended petition, Air Liquide America Corporation and Enron Louisiana Energy Company were added as party plaintiffs.
In their petition, plaintiffs requested a judgment declaring that certain properties owned by them and located in designated industrial areas could not be included in the area proposed to be incorporated as the municipality of Geismar. The plaintiffs also requested injunctive relief prohibiting the chairpersons, registrar of voters, and governor from taking any further steps to complete the incorporation process, including issuance of a certificate under LSA-R.S. 33:2 by the registrar of voters and the calling of an election under LSA-R.S. 33:3 by the governor.
In response to plaintiffs' petition, Jackson and Favorite filed a dilatory exception raising the objection of prematurity. In this exception, they argued plaintiffs' legal right to challenge an incorporation of a new municipality is defined in LSA-R.S. 33:3(D) and 4(B); thus any action filed prior to an election on the incorporation was premature.
A group of citizens ("Pamela H. Espey, et al.") who live in the area to be incorporated filed a petition of intervention, seeking a judgment declaring the petition for incorporation to be in violation of the requirements of LSA-R.S. 33:1 et seq. They also sought injunctive relief similar to that requested by the plaintiffs. Ascension Parish Assessor Gerald McCrory was named as a defendant in their intervention, in addition to those defendants named by plaintiffs.[3]
The Ascension Parish Chamber of Commerce, Inc. and its executive director, Martin McConnell, (collectively referred to as "the Chamber"), also filed a petition of intervention in which they alleged the incorporation of the proposed municipality would be detrimental to the growth of business in the area to be incorporated. In addition to injunctive relief, the Chamber requested a judgment declaring that any property established as a designated industrial area pursuant to LSA-R.S. 33:130.11 et seq. could not be included in the area proposed for incorporation. The Chamber further alleged that if LSA-R.S. 33:130.11 did not allow industrial areas to be annexed into an existing municipality, but did allow those areas to be incorporated into a new municipality, the statute was unconstitutional.
A third petition of intervention was filed in this action by George Furlow, a resident in the area to be incorporated. He also requested a declaratory judgment and injunctive relief, arguing in part that the petition for incorporation was invalid because signatures on the petition were obtained prior to the time the final property description was included in the petition.
A temporary restraining order was issued by the trial court on March 31, 1995, and was subsequently extended. The restraining order enjoined and prohibited the assessor, registrar of voters, and governor from taking any further steps in connection with any proposed incorporation which includes plaintiffs' properties.
On April 17, 1995, a separate exception raising the objection of prematurity and a supporting memorandum were filed by defendants. On that same day, defendants *154 filed their first peremptory exception, raising the objection of no cause/no right of action. They argued in part that the laws regarding industrial areas relied on by plaintiffs were unconstitutional, in that they create a tax exemption in violation of LSA-Const. art. VI, § 27(A), which grants a municipality the power to levy ad valorem taxes. In addition to their previously filed exceptions, defendants also filed a declinatory exception raising the objection of lack of jurisdiction, alleging the executive and legislative branches of government have the sole authority over the proposed incorporation until the election is complete.
Defendants filed a second peremptory exception of no cause/no right of action with respect to the Chamber's intervention. Defendants argued the Chamber had no right of action because it was not a person or governmental entity entitled to contest an incorporation under LSA-R.S. 33:4. In response to the Chamber's intervention, defendants also filed a declinatory exception of lack of jurisdiction, for the same reasons presented in their first exception pertaining to jurisdiction. With respect to the Chamber's and Pamela H. Espey, et al.'s interventions, defendants Jackson and Favorite filed another dilatory exception of prematurity, based on arguments presented in their prematurity exception filed with respect to the plaintiffs' petition. Defendants also filed a third peremptory exception raising the objection of no cause/no right of action with respect to the interventions filed by George Furlow and Pamela H. Espey, et al., and a fourth one with respect to the Chamber's supplemental and amending petition. Defendants' fifth exception of no cause/no right of action to plaintiffs' petition was based on LSA-R.S. 47:2110, pertaining to actions to oppose an ad valorem tax imposed without an election. Defendants also filed a sixth exception raising the objection of no cause/no right of action, alleging the unconstitutionality of LSA-R.S. 51:1202 and former LSA-R.S. 33:130.15.
Following a hearing, defendants' various exceptions raising the objections of lack of jurisdiction and prematurity were denied by the trial court. In its order, the trial court rescheduled the hearing on the preliminary injunction and on defendants' exceptions raising the objection of no cause/no right of action.
A consent order was entered, allowing the temporary restraining order to remain in effect until the hearing on the preliminary injunction. This consent order was subsequently extended until the trial court ruled on the application for permanent injunction. At the May 25, 1995 hearing on the declaratory judgment, the preliminary injunction, and multiple exceptions of no cause/no right of action, the parties stipulated that the plaintiffs currently owned land located in designated industrial areas established by Ascension Parish ordinance and the industrial areas furnished and maintained all of the services enumerated in former LSA-R.S. 33:130.15, now LSA-R.S. 51:1202. After the hearing, the court took these matters under advisement. To alleviate the need for additional evidence and another hearing, the parties stipulated that the evidence introduced at the preliminary injunction hearing would also be considered as evidence in connection with the application for a permanent injunction.
In written reasons for judgment dated November 8, 1995, the trial court held the clear statutory language of LSA-R.S. 51:1202 and 1203 precluded the chairpersons from including the disputed industrial areas in the boundaries of the proposed municipality. Accordingly, the trial court granted a permanent injunction.[4] No express mention was made at this time concerning the trial court's ruling on the exceptions of no cause/no right of action.
*155 On November 8, 1995, the trial court signed a judgment declaring that these designated industrial areas could not be included in the area proposed to be incorporated as the municipality of Geismar, in accordance with LSA-R.S. 51:1202 and 1203. The judgment also issued a permanent injunction which restrained, enjoined and prohibited the chairpersons from taking any further steps to cause the incorporation of the municipality of Geismar with any of plaintiffs' designated industrial areas within its boundaries. Further, with respect to such an incorporation effort, the judgment restrained, enjoined, and prohibited Registrar of Voters Poche from issuing or forwarding to the governor his certificate, Assessor McCrory from issuing his statement of the assessed value of real property under LSA-R.S. 33:1(A)(3), and Governor Edwards from issuing any call of an election under LSA-R.S. 33:3 and 18:1299.1.
With respect to the pending exceptions of no cause/no right of action, the trial court found that the face of the plaintiffs' and interveners' petitions stated a cause of action. Additionally, it held that the plaintiffs and intervenors were proper parties to bring such an action.[5] Therefore, defendants' various peremptory exceptions raising the objection of no cause/no right of action were denied. A judgment to this effect was read, rendered and signed on November 10, 1995.
On November 13, 1995, the chairpersons filed a motion for appeal which stated they wished "to appeal devolutively from the judgments and orders rendered ... on the 8th day of November, 1995." The chairpersons filed a separate motion for appeal on November 15, 1995, seeking a suspensive appeal "from the judgments and orders rendered... on the 8th day of November, 1995" as to the petition for declaratory judgment only, not the injunctive relief. Neither motion for appeal mentioned the May 9, 1995 judgment on the exceptions of prematurity and lack of jurisdiction or the November 10, 1995 judgment on the exceptions of no cause/no right of action. Further, the notice of granting of defendants' appeal simply states that an appeal from the judgment of November 8,1995, was granted.
On appeal, defendants argue the trial court erred in denying their exceptions raising the objections of prematurity, no cause of action, no right of action and lack of jurisdiction. They also contend the trial court erred in granting the declaratory and injunctive relief sought by plaintiffs. Defendants attached only the November 8, 1995, judgment to their brief.

Scope of Appeal
This court notes defendants appealed the November 8, 1995 judgment on the merits and did not specifically appeal the May 9, 1995 or November 10,1995 judgments on the exceptions. However, defendants' brief raises issues pertaining to the judgments on the exceptions. Although no motion to dismiss or to strike with respect to these issues has been filed, we will discuss this matter in light of this court's authority under LSA-C.C.P. arts. 2161 and 2162.
Appeals are favored in the law. General Motors Acceptance Corp. v. Deep South Pest Control, Inc., 247 La. 625, 173 So.2d 190, 191 (1965). Plaintiffs do not allege they have been prejudiced by defendants' error in omitting the dates of the judgments on the exceptions in their motion for appeal. The circumstances indicate the defendants intended to appeal from the judgments on the exceptions, as well as the judgment on plaintiffs' request for declaratory and injunctive relief. Therefore, we will address defendants' appeal of issues relating to the judgments on the exceptions. See State, Department of Transportation & Development v. Estate of Summers, 527 So.2d 1099, 1101-1102 (La.App. 1st Cir.1988).

Applicable Law
LSA-R.S. 51:1202(A)[6] provides:
*156 Those industries located within the boundaries of any industrial area established pursuant to Subpart B-1 of Part IV of Chapter 1 of Title 33 of the Louisiana Revised Statutes of 1950 shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation or incorporation. Any industrial area heretofore designated which complies with the provisions hereof shall be considered validly designated hereunder and any agreement or resolution with respect thereto shall be considered to include all services herein enumerated though not specifically included therein. Agreements between the industries located within the boundaries of an industrial area and the governing authority of the parish and/or any municipality or municipalities situated therein may be made for mutual fire protection in grave emergencies.
LSA-R.S. 51:1203[7] further provides: "No portion of an industrial area that provides any of the services enumerated in R.S. 51:1202 shall be included within any newly created municipality."

Applicability of LSA-R.S. 33:4 and 47:2110
Defendants filed various exceptions raising the objections of no cause/no right of action. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law, based on the facts alleged in the pleadings.[8]Everything on Wheels Subaru, Inc. v. Subaru South Inc., 616 So.2d 1234, 1235 (La. 1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. In deciding the exception, the court must accept the well-pleaded allegations of fact as true. Reed v. Yor-Wil, Inc., 406 So.2d 236, 238 (La.App. 1st Cir. 1981), writ denied, 410 So.2d 1135 (La.1982). Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. LSA-C.C.P. art. 865; Kuebler v. Martin, 578 So.2d 113, 114 (La.1991). For purposes of ruling on an exception of no cause of action, the court must sustain the exception only if the law affords no remedy under any evidence admissible under the pleadings. Legislation In Support of Animals v. Vermilion Parish Police Jury, 617 So.2d 1243,1245 (La.App. 3rd Cir.1993).
Plaintiffs alleged the inclusion of designated industrial areas within the boundaries of the area to be incorporated is a violation of the law. Accepting this factual allegation as true, we must determine whether the law affords a remedy to the plaintiffs.
The parties disagree as to which remedies are available, if any. Plaintiffs contend they can seek declaratory and injunctive relief. Defendants argue LSA-R.S. 33:4 provides the sole remedy for contesting a municipality's incorporation and LSA-R.S. 47:2110 provides the only procedure for contesting an ad valorem tax without an election. Accordingly, they contend the relief sought is not available to the plaintiffs. For these same reasons, they submit plaintiffs' suit was filed prematurely.[9] However, LSA-R.S. 33:4 *157 is not applicable, for the plaintiffs' action questions the validity and seeks enforcement of statutes which prohibit the inclusion of their property in any newly incorporated municipality, and is not one to contest an incorporation pursuant to LSA-R.S. 33:4.[10] Nor is the plaintiffs' action one to oppose a tax, thus LSA-R.S. 47:2110 is inapplicable.
Once the chairpersons submitted a petition for incorporation to the registrar of voters, as contemplated by LSA-R.S. 33:1(B)(2), with a legal description containing designated industrial areas within the boundaries of the proposed municipality, the owners of such industrial areas had the right to seek a declaration of their rights, status, or other legal relations regarding the chairpersons' actions, which allegedly were in direct violation of the law. See LSA-C.C.P. art. 1872.[11] In fact, the declaratory judgment action may well be beneficial to the parish governing authority and to the residents of Ascension Parish.[12]See Allied Chemical Corporation v. Iberville Parish Police Jury, 426 So.2d 1336, 1341 n. 2 (La.1983) (Lemmon, J. dissenting in part).
Arguing that the executive and legislative branches of government have the sole authority in the area of incorporation, defendants contend the trial court erred in denying their exception raising the objection of lack of subject matter jurisdiction. They submit that the trial court's jurisdiction does not vest until after the electorate has voted. In light of previous conclusions concerning the inapplicability of LSA-R.S. 33:4 and 47:2110, we find no merit in defendants' jurisdictional arguments.[13]

Constitutionality of LSA-R.S. 51:1202 and 1203
With respect to the denial of their exceptions of no cause of action and the granting of plaintiffs' request for declaratory and injunctive relief, defendants argue the trial court erred because the laws relating to industrial areas, LSA-R.S. 33:130.11 et seq., are unconstitutional. Defendants contend these laws are unconstitutional because they interfere with a municipality's constitutionally granted power to levy ad valorem taxes and create an exemption from ad valorem taxation not found in the constitution.
The legislature has all powers which have not been denied it by the state constitution. Matter of American Waste & Pollution Control Co., 588 So.2d 367, 373 (La.1991); Moore v. Roemer, 567 So.2d 75, 78 (La.1990). The legislature may enact any legislation the state constitution does not prohibit. To hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature to enact such a statute. Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of Louisiana, 529 So.2d 384, 387 (La.1988). Unless the fundamental rights, privileges, and immunities of a person are involved, there is a strong presumption that the legislature, in adopting a statute, has acted within its constitutional powers. Id. The presumption is especially forceful in the case of statutes *158 enacted to promote a public purpose. Id. The opponents who are challenging the constitutionality of a statute bear the burden of proving clearly that a particular statute is barred by a provision of the state constitution. Matter of American Waste & Pollution Control Co., 588 So.2d at 373. It is insufficient for the opponents to establish that the statute's constitutionality is questionable; instead, they must clearly and convincingly prove that the legislature's action is in contravention of a specific provision of the constitution. Id. Any doubt as to the legislation's constitutionality must be resolved in its favor. Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of Louisiana, 529 So.2d at 387.
The Louisiana constitution provides that the legislature may authorize parishes to create and define industrial areas within their boundaries in accordance with procedures and subject to regulations set forth by the legislature. LSA-Const. art. VI, § 18. In 1964, the legislature enacted LSA-R.S. 33:130.11 et seq. pertaining to industrial areas, in which it granted parish governing authorities the ability to establish industrial areas composed of territory wholly within the parish boundaries and without the boundaries of any municipality. LSA-R.S. 33:130.11. Subject to the written approval of 51% in interest of the landowners of the proposed industrial area, such areas may include any compact body of land which is used exclusively for industrial purposes or is primarily suited for industrial development. LSA-R.S. 33:130.11 and 130.12. Industries within a designated industrial area are required to furnish and maintain the following services: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. LSA-R.S. 51:1202, formerly LSA-R.S. 33:130.15. This statute was enacted to enhance industrial development by allowing industries to provide for themselves certain services normally provided by parish and local governments, thus freeing the parish or local government from having to provide these services. In return for providing these services, these industries are not subject to annexation by an existing municipality or incorporation into a newly formed municipality. LSA-R.S. 51:1202 and 1203.
Pursuant to this legislative grant of authority, the Ascension Parish Police Jury established certain industrial areas within the parish. Plaintiffs' properties are located in those designated areas. Additionally, plaintiffs agreed by written instruments to furnish those services referenced above and were in fact maintaining those services. In light of their compliance with the mandates of LSA-R.S. 51:1202, incorporation or inclusion of these areas within any newly created municipality is expressly prohibited by LSA-R.S. 51:1202 and 1203.
Defendants contend these two statutes are in abrogation of a municipality's constitutionally granted power to levy an ad valorem tax for general purposes, and are therefore unconstitutional. See LSA-Const. art. VI, § 27(A). Recognizing that tax revenues enable municipalities to provide certain services such as clean water and sewerage disposal, defendants contend the proposed municipality of Geismar could not exist without a sufficient tax base. In other words, it would be unable to provide such services to the people who live within the municipality limits if the designated industrial areas were not included in its tax base. By precluding the inclusion of these industrial areas in the proposed municipality, the statutes remove them from the proposed municipality's tax base. Therefore, defendants contend the legislature, by enacting these statutes, created an exemption from ad valorem taxation in derogation of LSA-Const. art. VI, § 27.
The legislature shall provide by general law for the incorporation, consolidation, merger, and government of municipalities. LSA-Const. art. VI, § 2. By enacting LSA-R.S. 33:1 et seq., the legislature provided procedures for the establishment and designation of municipalities. LSA-R.S. 33:1 authorized the residents of any unincorporated area to propose the incorporation of an area. The steps to be taken in the incorporation process are found in LSA-R.S. 33:1 through 7.
*159 Municipal corporations are creatures of the state, established by the legislature for the purpose of administering local affairs of government, and possess only such powers as are conferred on or delegated to them by the state. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1367 (La. 1991); Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235, 238 (1948). Such powers as these corporations have, as well as the limits of the territory they are to govern, are all matters that are entirely within the province of the legislature. Pyle v. City of Shreveport, 40 So.2d at 238. Since there is no constitutional provision restricting the legislature's authority in this respect, the legislature may enlarge or diminish the territory of these corporations, consolidate one with another in whole or in part, and even terminate their existence at will. Id.
Clearly, the residents of an unincorporated area do not have greater rights than the residents of a municipal corporation. Like municipal corporations, their powers are also within the province of the legislature, such that the legislature is free to limit the territory that is subject to incorporation. Pursuant to its authority under LSA-Const. art. VI, §§ 2 and 18, the legislature certainly has the power to limit the territory to be included in a new municipality. By enacting LSA-R.S. 33:130.11, 51:1202 and 51:1203, the legislature has exercised powers given to it by the state constitution.
Defendants, who challenge the constitutionality of LSA-R.S. 51:1202 and 1203, bear the burden of proving clearly that these particular statutes are barred by a specific provision of the state constitution. See Matter of American Waste & Pollution Control Co., 588 So.2d at 373. Since they did not clearly and convincingly prove either that the legislature's enactment of these statutes was in contravention of a specific provision of the constitution, or that there was a constitutional intention to limit the power of the legislature in the manner claimed, we conclude the trial court did not err in granting the injunction and denying the defendants' exception of no cause of action.[14]

Decree
For the foregoing reasons, the judgments of the trial court denying defendants' exceptions raising the objections of prematurity, jurisdiction and no cause/no right of action are affirmed. We also affirm the judgment granting declaratory and injunctive relief. All costs of this appeal are to be paid by defendants.
AFFIRMED.
NOTES
[1] Judge J. Michael McDonald of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Jackson, Favorite and Baker will be referred to collectively as "the chairpersons."
[3] McCrory will be referred to collectively with the other defendants.
[4] In its reasons for judgment, the trial court also expressed reservations regarding the chairpersons' compliance with LSA-R.S. 33:1 with respect to the preparation and submission of the petition for incorporation, including: (1) the absence of an assessed value of the real property, as required by LSA-R.S. 33:1(A)(3); (2) failure to circulate the actual petition for signatures; (3) obtaining signatures prior to the drafting of the actual petition; and (4) obtaining signatures prior to the inclusion of the final property description in the petition.
[5] The trial court noted that although the Chamber may not be a proper party to bring an action for injunctive relief, it was a proper party to bring a suit to challenge the constitutionality of a statute.
[6] While this matter was pending, Acts No. 194 of the 1995 regular legislative session was passed and signed by the governor. Act 194 repealed LSA-R.S. 33:130.15 and reenacted its substance with amendments as LSA-R.S. 51:1202.
[7] In section 4 of Act 581 of 1995, the legislature enacted LSA-R.S. 51:1202, which was re-designated by the Louisiana State Law Institute as LSA-R.S. 51:1203.
[8] Cause of action, as used in the context of the peremptory exception, means the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d at 1238.
[9] A suit is premature if it is brought before the right to enforce it has accrued. LSA-C.C.P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. Fairfield Development Company v. Jackson, 438 So.2d 664, 669 (La.App. 2nd Cir.1983). LSA-C.C.P. art. 926 provides for the dilatory exception of prematurity. Prematurity contemplates that the action taken by the petitioner occurs prior to some requisite procedure or assigned time. Jones v. Crow, 633 So.2d 247, 249 (La.App. 1st Cir.1993). In light of the conclusions reached in this opinion, we find no error in the trial court's denial of defendants' prematurity exceptions.
[10] Additionally, we find no merit in defendants' argument that plaintiffs' suit constitutes a collateral attack on their incorporation efforts. Plaintiffs do not oppose the incorporation of Geismar; they oppose only the inclusion of their properties within that municipality.
[11] LSA-C.C.P. art. 1872 provides that a declaratory judgment action is available to contest the validity or the applicability of a statute.
[12] If the property in the designated industrial areas comprises a substantial percentage of the total assessed value of all property within the area proposed for incorporation, then it would be beneficial to the parish governing authority and to people who own land in the area to be incorporated, for any declaration to be made early. This is particularly true if the industrial areas are declared exempt from incorporation, since it is questionable whether incorporation of the remaining property would then be feasible or desirable, and the parish governing authority would otherwise expend funds on a fruitless election.
[13] Defendants also complained about the trial court's denial of a motion in limine filed to exclude all evidence regarding the manner in which the incorporation process occurred. Since this evidence has no bearing on the decision reached in this case, we pretermit discussion of this issue.
[14] In conjunction with the request for injunction, defendants contend plaintiffs have not stated a cause of action. This contention is based on a failure to show irreparable injury. Although irreparable harm is the usual issue in an injunction proceeding, when the plaintiff is alleging that the defendants' action is in direct violation of a prohibitory law, there is no need to prove irreparable harm. State, Louisiana State Board of Examiners of Psychologists of DHHS v. Atterberry, 95-0391, p. 5, (La.App. 1st Cir. 11/9/95), 664 So.2d 1216, 1220. Since LSA-R.S. 51:1202 and 1203 are prohibitory laws, it was unnecessary for plaintiffs to prove irreparable harm to obtain injunctive relief.